UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------
IN RE:

     DANIEL W. BORCHERT and         CASE NO. 04-65653
     CINDY BORCHERT

                  Debtors         Chapter 7
----------------------------------------------------------
APPEARANCES:

RICHARD P. WEINHEIMER, ESQ.
*Attorney for Debtors*
4 Canal Street
Fort Plain, New York 13339

JAMES C. COLLINS, ESQ.
*Chapter 7 Trustee*
P.O. Box 713
Whitney Point, New York 13862-0713

Hon. Diane Davis, U.S. Bankruptcy Judge


**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**


      The Court has under consideration a motion filed on July 15, 2009, by Richard P.

Weinheimer, Esq. ("Weinheimer") requesting attorney's fees of $5,000 and a determination by the

Court that certain funds awarded in connection with the settlement of class action litigation are not

property of the bankruptcy estate of Daniel W. Borchert ("Mr. Borchert") and Cindy J. Borchert

(collectively, the "Debtors").  Opposition to the motion was filed by James C. Collins, Esq., the

chapter 7 trustee ("Trustee") on July 31, 2009.[1]

---

    [1] On July 20, 2009, the Trustee filed a motion to compel the Debtors and Weinheimer to
comply with an Order of the Court, signed June 16, 2009 (Dkt. No. 34), requiring them to turnover
to the Trustee $21,246.74 and $5,000 in legal fees.  The Trustee's motion (Dkt. No. 42) was granted
by the Court, but according to the docket in the case, no order has ever been submitted.

2

Oral argument on Weinheimer's motion was heard by the Court at its regular motion calendar in Binghamton, New York, on September 3, 2009. The Court afforded the parties an opportunity to file memoranda of law, and the motion was taken under submission on October 1, 2009.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A), (E) and (O).

## FACTS

The Debtors filed a voluntary petition pursuant to chapter 7 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1330 ("Code") on August 6, 2004. On September 21, 2004, the Trustee filed a Report of No Distribution, and the Debtors were issued a discharge on November 15, 2004. The case was closed on December 2, 2004. On October 31, 2008, the Trustee filed an *ex parte* motion seeking to reopen the case. The Court signed an Order that day granting the relief sought.

According to a "Claimant Profile Form" completed by Mr. Borchert on or about January 3, 2006, in connection with the case of *In re Vioxx Products Liability*, MDL Docket No. 1657, U.S. District Court for the Eastern District of Louisiana ("Vioxx litigation"), Mr. Borchert indicated that he had a heart attack in October 2004, for which he was hospitalized at Mary Imogene Bassett Hospital in Cooperstown, New York. *See* Exhibit D, attached to Trustee's Memorandum of Law,

3

filed October 1, 2009 ("Trustee's October M/L") (Dkt. No. 58).  According to a consultation done on Mr. Borchert while in the hospital on October 5, 2004, Mr. Borchert had experienced worsening (in frequency and severity) chest pain with exertion over the two weeks prior to the consultation. *See* Exhibit A, attached to Trustee's Memorandum of Law, filed August 21, 2009 ("Trustee's August M/L") (Dkt. No. 48).  According to the consultation, Mr. Borchert also indicated that the symptoms probably had been there for years but he had difficulty differentiating them because of other chronic back and neck pain.  *Id.*

According to the "Profile Form," Debtor indicates that he was prescribed Vioxx for back pain.  His "First Confirmed Vioxx Use" was identified as December 30, 2003.  *See* Exhibit A, attached to Trustee's October M/L.  Trustee alleges that based on a review of Mr. Borchert's medical records, he had ceased taking Vioxx sometime prior to an office visit on November 9, 2004.

On November 9, 2007, Merck & Co., the manufacturer and distributor of Vioxx,[2] and the "Negotiating Plaintiffs' Counsel" in the Vioxx litigation negotiated a settlement agreement which provided for the disbursement of interim payments to certain eligible claimants, including Mr. Borchert.  The payments were based on a point system.  According to this system, Mr. Borchert was determined to fall in the category for someone who was estimated to have taken between 128 and 389 pills over a 6-18 month period leading up to his heart attack on October 4, 2004.  Mr. Borchert's net points were calculated to be 202.12 points.  *See* Exhibit A, attached to Trustee's October M/L. According to Beasley Allen, Crow, Methvin, Portis & Miles, P.C., who represented the Debtor in the Vioxx litigation, the Debtor was entitled to receive an interim settlement based upon 40% of the estimated point value of his claim, less any attorney's fees, capped at 32%, and costs.  *See* Exhibit

---

[2]  Vioxx was allegedly withdrawn from the market by Merck on September 30, 2004.

4

B, attached to Trustee's October M/L.  As of September 30, 2009, Mr. Borchert's "present point value" was $1,915.00, and it was estimated that he would receive an interim check in the amount of $105,280.  It was also estimated that he would receive a final settlement check in late 2009 after all potential Vioxx claims were processed and the value of each point recalculated.  *Id.*

## ARGUMENTS

Weinheimer contends that the settlement did not have its roots in any prepetition activities of Mr. Borchert and his claim for injuries did not arise until he was certified as a member of the class on September 1, 2008.  He asserts that Mr. Borchert had not suffered any damages, i.e. his heart attack, until after the petition was filed.  Accordingly, Weinheimer takes the position that until Mr. Borchert suffered his heart attack, his claim or cause of action had not accrued, and he would not have been eligible to initiate a lawsuit in state court or participate in the class action settlement.  Thus, he argues that all of that occurred postpetition and after the Debtors received a discharge and, therefore, is not property of the estate.

Relying on *Segal v. Rochelle*, 382 U.S. 375, 380 (1966), the Trustee points out that Mr. Borchert's heart attack was "sufficiently rooted in the prebankruptcy past" given that a significant amount of his daily use of Vioxx occurred prepetition.  The Trustee points out that the extent and consistency of Mr. Borchert's use of Vioxx was a determinative factor in calculating the points on which the award was based.[3]  Again relying on the analysis set forth in *Segal*, the Trustee further

---

[3]  According to the Trustee, Mr. Borchert's regular ingestion of Vioxx for a period of between 6 and 18 months resulted in an upward adjustment in his points by 20%.  *See* Trustee's October M/L at 10.

5

asserts that "only a small portion of [Mr. Borchert's] net Vioxx award (less than 10%) would be required to fund a 100% dividend to their creditors."  *See* Trustee's October M/L at 10.  Thus, a determination that the Vioxx award is property of the Debtors' estate would not have a serious impact on the Debtors' fresh start.

## DISCUSSION

Code § 541(a) provides a  broad definition of the term "property of the estate."[4]  *See In re Riccitelli,* 320 B.R. 483, 489 (Bankr. D. Mass. 2005).  As noted by one court, "[b]y including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time."  *In re Richards*, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000), quoting *Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423, 1425 (9th Cir. 1984).  The determination of the extent of a debtor's interest in property is generally a matter of state law.  *See Butner v. United States*, 440 U.S. 48, 54-55 (1979); *see also Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1101 (2d Cir. 1990) (indicating that "a]lthough federal law determines the outer boundary of what may constitute property of the estate, state law determines the 'nature of a debtor's interest'" and whether that interest is sufficient to confer on the estate a property right in the action).  Given the Code's broad definition of "property of the estate," it is clear that Congress intended that bankruptcy policy considerations be weighed in any such determination.

---

[4]  Code § 541(a)(1) broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

6

The leading decision "on whether or when an inchoate claim constitutes 'property' of the debtor as of the date of the bankruptcy filing" is that of the Supreme Court in *Segal*, *supra.* Under the analysis set forth in *Segal*, it has been found appropriate to employ a three-step process:

> (1) determine the extent to which the claim is rooted in the prebankruptcy past;[5] (2) determine the extent to which it is entangled with the debtor's ability to make an unencumbered fresh start; and then (3) with both considerations in the balance, determine whether, in view of the purposes of the Bankruptcy Act (now the Bankruptcy Code), the claim is more properly categorized as prepetition property that should come into the estate or a postpetition asset that the Debtor should take free of the claims of prebankruptcy creditors. . . . this analysis does not turn on whether, under state law, the claim had accrued as of the petition date.

*Riccitelli*, 320 B.R. at 490-91.

This is a matter of first impression for this Court. With the three-step process in mind, it has reviewed the outcome of a number of different decisions that have examined the issue. For example, the court in *In re Monger*, 2005 LEXIS 1294 (Bankr. N.D. Tex. July 8, 2005) was asked to consider whether the debtor's interest in a class action recovery was property of the debtor's estate. The debtor had taken an antidiabetic drug known as Rezulin from the fall of 1997 through early 1999. She filed a chapter 13 petition on June 20, 2000, and the case was later converted to chapter 7 on December 16, 2003. After becoming aware of potential lawsuits arising from the use of Rezulin, the debtor completed a questionnaire in March 2002. *Id.* at *2. Despite the fact that she had not sustained any injury or ill effects from her ingestion of the anti-diabetic drug Rezulin, the debtor was later notified in March 2004 that she was eligible to receive approximately $1,677.96 in net proceeds as part of a class action settlement with the manufacturer of the drug. *Id.* at *3. The court concluded

---

[5] As pointed out by the court in *Riccitelli,* "*Segal* requires not just *some* prepetition roots, however attenuated, but that the cause of action be '*sufficiently* rooted in the prebankruptcy past.'" *Riccitelli*, 320 B.R. at 491, quoting *Segal,* 382 U.S. at 379-80 (emphasis added).

7

that the award was not property of the estate given the fact that there was no evidence of damage or injury from her prepetition use of Rezulin and that no cause of action had accrued prior to her filing. *Id.* at *5.

In *Richards* the debtor filed a chapter 7 petition on March 18, 1999. On October 20, 1999, he was diagnosed with asbestos-related injuries arising from his exposure to asbestos from 1960 through 1974. He commenced a personal injury lawsuit against his former employer on February 23, 2000, and the trustee filed a motion for turnover of the lawsuit. The trustee in *Richards* argued that the cause of action was property of the estate because the exposure occurred prepetition. *See Richards*, 249 B.R. at 860. The debtor argued that the cause of action did not accrue until he was diagnosed with an asbestos-related injury postpetition and, therefore, it was not property of the estate. *Id.* at 861.

Ultimately, the court in *Richards* concluded that in determining whether a claim is property of the estate, "the test is not the date that the claim accrues under state law." The appropriate inquiry is "whether the claim is 'sufficiently rooted in the prebankruptcy past.'" *Id.*, quoting *Segal,* 382 U.S. at 380; *see also Field v. Transcontinental. Ins. Co.,* 219 B.R. 115, 119 n.9 (E.D.Va. 1998), *aff'd,* 173 F.3d 424 (4th Cir. 1999) (indicating that "[e]ven when a debtor's claim is grounded in prepetition circumstances, his estate can recover for injury occurring postpetition").

In *Richards* the court found that all of the allegedly wrongful conduct giving rise to the debtor's claim occurred 25 years before he filed his bankruptcy prepetition when he was exposed to asbestos. He was diagnosed with asbestos-related injuries seven months postpetition, and approximately four months later he commenced a personal injury lawsuit against his former employer. Richards, 249 B.R. at 860. It was found that his prepetition asbestos exposure "led

8

directly and inevitably to the postpetition accrual of his claim." *Id.* at 861-62.  The court held that the debtor's claim for asbestos injuries was property of the estate "even though his diagnosis and therefore his legal ability to sue were postpetition." *Id.* at 862.

There is an obvious distinction to be drawn between *Monger* and *Richards*.  In *Monger* the debtor's award clearly had "some" prepetition roots, but those roots arguably would not have been a "sufficient" basis for her to individually sue the manufacturer without there being an identifiable injury linked to her prepetition use of Rezulin.  On the other hand, in *Richards* the debtor had been diagnosed with an asbestos-related injury postpetition which was associated with asbestos exposure some twenty-five years before he filed his petition.   Clearly, his claim for damages were "sufficiently rooted" in his prebankruptcy past to warrant the finding that it was property of the estate, despite the fact that his diagnosis occurred postpetition.

In the view of the Court, the facts of *Richards* more closely mirror those now before it than those of *Monger*.  Mr. Borchert suffered a heart attack on October 4, 2004, some seven or eight months after first ingesting Vioxx in late December 1993 and some two months after filing his chapter 7 bankruptcy petition.  According to the medical examination following his heart attack, he admitted to having symptoms for years, including "a pressure that radiates down his left arm and up into his neck" which he attributed to chronic neck and back pain.  *See* Exhibit A at page 3, attached to Trustee's August M/L (Dkt. No. 48).  His eligibility to receive settlement proceeds as a member of the class action litigation was predicated not only on the fact that he had suffered a heart attack, but also on a point system under which he was entitled to a 20% upward adjustment due to the overall duration of his Vioxx use, namely, 6-18 months.  According to his medical records, he ceased taking Vioxx sometime prior to November 9, 2004.  Thus, of the ten months he had taken

9

Vioxx (January through October 2004), seven of those months occurred prior to filing his petition (January through July 2004).  In the opinion of this Court, his injury was sufficiently rooted in the prebankruptcy past to constitute property of the estate.

Consistent with the analysis found in *Segal,* the Trustee also focuses on the second step of the process, as discussed in *Riccitelli*, namely the extent to which the Court's holding will interfere with the Debtors' "ability to make an unencumbered fresh start."  *See Segal*, 382 U.S. at 380.[6]  The Trustee makes the argument that "any impediment to Mr. Borchert's fresh start would be relatively light - only a small portion of his net Vioxx award (less than 10%) would be required to fund a 100% dividend to his creditors."  *See* Trustee October M/L at 10.  Neither the court in *Monger* or *Richards* discussed the second step in the analysis.  In addition, if the Court were to consider the second step in the analysis, based on the representations by Trustee's counsel, it would appear that that prong discussed in *Segal* would be satisfied as well.  As noted above, it was anticipated that the Debtor would be receiving a net award in excess of $200,000 by the end of 2009.  According to the Debtors' schedules, their estimated unsecured claims totaled $21,246.73.  *See* Schedule F, attached to Debtors' Petition.  The payment of that amount, assuming all creditors listed were to file proofs of claim in this case, which is over five years old, should not interfere with the Debtors' fresh start.

Accordingly, with both considerations in balance, the Court concludes that the Vioxx award is sufficiently rooted in the Debtors' pre-bankruptcy past and, is therefore property of the Debtor's estate and should be turned over to the Trustee.

---

[6]    The court in *Ryerson, supra,* examined this aspect of *Segal* in light of the 1978 revision of the Bankruptcy Code and found that whether the claim is somehow entangled with the debtor's ability to make a fresh start is no longer a consideration.  *See Field*, 219 B.R. at 119, n.7, citing to *Ryerson*, 739 F.2d at 1426.  Given the facts of this particular case, the Court need not reach a conclusion on that point.

10

Based on the foregoing, it is hereby

ORDERED that Weinheimer's motion on behalf of the Debtors seeking a determination that the funds awarded to Mr. Borchert in connection with the Vioxx settlement agreement are not property of the estate is denied; it is further

ORDERED that the Debtor comply with this Court's prior Order of June 16, 2009, requiring the Debtors and Weinheimer to turn over to the Trustee $21,246.73 and $5,000 in legal fees, respectively; it is further

ORDERED that the Trustee file a Notice of Asset Case and Request for Notice to Creditors upon receipt of the above-referenced funds; it is further

ORDERED that Weinheimer file a proof of claim for legal fees and costs; and it is finally

ORDERED that any attorney's fees sought in connection with the Trustee's motion to compel turnover and Trustee's opposition to Weinheimer's motion herein be restored to the February 4, 2010 Binghamton calendar at 9:30 a.m.

Dated at Utica, New York
this 8th day of JanuarMary 2010

/s/ Diane Davis_____
DIANE DAVIS
U.S. Bankruptcy Judge